Argued and submitted September 12, 1995, the decision of the Court of Appeals reversed; judgment of the circuit court affirmed January 26, 1996

Cheryl HUFF,
*Respondent on Review,*

*v.*

GREAT WESTERN SEED CO.,
a New Jersey Corporation,
and Lance Dickey,
*Petitioners on Review.*

(CC 930061; CA A80301; SC S41976)

909 P2d 858

Kathy Peck, of Williams, Zografos, Peck & Atwood, Salem, argued the cause for petitioners on review. With her on the briefs was Eli D. Stutsman, Portland.

Mark K. Grider, Salem, argued the cause and filed the brief for respondent on review.

Trent T. Whitford, Salem, filed briefs on behalf of *amicus curiae* Cascade Employers Association.

Corbett Gordon, of Gordon, McKeon & Rives, Portland, filed a brief on behalf of *amici curiae* Family Restaurants, Inc.; ARG Enterprises, Inc., dba (in Oregon) Stuart Anderson's Restaurants, Stuart Anderson's Black Angus, and Stuart Anderson's Cattle Company; and Community Ambulance.

Francis T. Barnwell and Kenneth E. Bemis, of Bullard, Korshoj, Smith & Jernstedt, Portland, filed a brief on behalf of *amici curiae* Armstrong World Industries; Food Employers, Inc.; Fred Meyer, Inc.; NIKE, Inc.; Norpac Foods, Inc.; Northwest Packers Industrial Association; Red Lion Inns; Rogue Valley Medical Center; TNT Reddaway Truck Line; and United Grocers, Inc.

Doris J. Brook, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

GILLETTE, J.

## GILLETTE, J.

■ We are asked in this case to decide when the statute of limitations begins to run in a particular class of unlawful employment practice actions brought pursuant to ORS 659.121(1). Those actions, designated as "unlawful motive" cases in the employment law field, are cases in which the employer is charged with engaging in a practice that, except for the fact that it is prompted by an unlawful motive, would be lawful. The Court of Appeals concluded that, in such cases, the applicable statute of limitations, ORS 659.121(3),[1] does not begin to run until the plaintiff "ha[s] the requisite knowledge of the employer's discriminatory motive to make him aware that an unlawful practice ha[s] occurred." *Huff v. Great Western Seed Co.*, 131 Or App 459, 464, 885 P2d 723 (1994). On review, we hold that a plaintiff's belated discovery of an employer's unlawful motive does not delay the commencement of the statutory limitations period.

■ Because this case was decided on a motion to dismiss, we take the facts from plaintiff's complaint. *See Dotson v. Smith*, 307 Or 132, 134, 764 P2d 540 (1988) (stating methodology). In 1991, plaintiff suffered a work-related injury that required her to be absent from work. Later in that year, when plaintiff attempted to return to work, defendants refused to reinstate her. On January 2, 1992, defendants did reinstate plaintiff, but ultimately discharged her one week later, on January 9, 1992. At the time of her discharge, defendants told plaintiff that she was being fired for having a "bad attitude." Two weeks later, however, on January 24, 1992, plaintiff obtained a copy of a memorandum signed by defendant Dickey stating that plaintiff was discharged for "actively promoting and advocating fraudulent injury claims in the category of workman's [*sic*] compensation against the SAIF Insurance Co."

Plaintiff filed the present action on January 20, 1993, alleging that defendants had violated ORS 659.410, 659.415, and 659.420, by refusing to reinstate plaintiff and, later, by firing her for invoking her rights under the workers' compensation statutes.[2] Defendants moved to dismiss the

---

[1] ORS 659.121(3) is set out below, 322 Or at 461.

[2] ORS 659.410(1) provides:

complaint, pursuant to ORCP 21 A(9), on the ground that plaintiff's action had not been commenced within the relevant one-year period of limitation, set out in ORS 659.121(3). That statute provides in part:

> "Where no complaint has been filed pursuant to ORS 659.040(1) or 659.045(1) and except as otherwise provided herein, the civil suit or action shall be commenced within one year of the occurrence of the alleged unlawful employment practice."

The trial court granted defendants' motion and entered judgment against plaintiff.

■ On appeal, the Court of Appeals reversed, holding that, because ORS 659.121(3) embraces the so-called "discovery rule,"[3] the limitations period provided therein did not begin to run until plaintiff received Dickey's memorandum, thereby discovering defendants' unlawful motive. In so holding, the court relied on its own opinions in *Kraxberger v. Chevron USA, Inc.*, 118 Or App 686, 848 P2d 1242 (1993), and *Cortez v. State of Oregon*, 121 Or App 602, 855 P2d 1154, *rev den* 318 Or 25 (1993), both of which assume, without analysis, that ORS 659.121(3) incorporates the discovery rule. Defendants now ask this court to examine that assumption and to decide this case on the basis of this court's own analysis of ORS 659.121(3).

---

> "It is an unlawful employment practice for an employer to discriminate against a worker with respect to hire or tenure or any term or condition of employment because the worker has applied for benefits or invoked or utilized the procedures provided for in ORS chapter 656 or of ORS 659.400 to 659.460 or has given testimony under the provisions of such sections."

ORS 659.415(1) provides, in part:

> "A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position."

ORS 659.420(1) provides:

> "A worker who has sustained a compensable injury and is disabled from performing the duties of the worker's former regular employment shall, upon demand, be reemployed by the worker's employer at employment which is available and suitable."

[3] The "discovery rule" is a rule of interpretation of statutes of limitation that has the effect of tolling the commencement of such a statute under certain conditions.

■     A discovery rule cannot be assumed, but must be found in the statute of limitations itself. Our task, thus, is an interpretive one: We must determine whether the legislature intended to adopt the discovery rule when it enacted ORS 659.121(3).

■     As always, we begin the process of statutory interpretation with the text and context of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). On its face, ORS 659.121(3) conveys a legislative intent that the limitations period commence with the "occurrence" of the unlawful employment practice, but when is that?

The word is not defined in the statute. Neither is it self-defining. Resort to the dictionary, while it suggests a direction, does not resolve the issue, either. The dictionary defines "occurrence" as "something that takes place; *esp*: something that happens unexpectedly and without design[;] * * * the action or process of being met with or coming into view." *Webster's Third New Int'l Dictionary*, 1561 (unabridged 1993). The first definition would make the "occurrence" an event that need not have been discovered to have legal effect. The second definition, on the other hand, could be said to lend some comfort to the other view. On its face, therefore, it is not clear which interpretation of ORS 659.121(3) was intended by the legislature. *See PGE*, 317 Or at 611 (stating that standard for resolving statutory interpretation questions based on text and context alone). We therefore turn to legislative history to resolve remaining doubts as to the legislature's intent. *Id.* at 611-12.

The statute's legislative history shows that the legislative committees charged with initial consideration of the 1977 bill that became ORS 659.121(3) — House Bill (HB) 2223 — contemplated the benefits of incorporating a discovery rule into the limitations period, but ultimately decided against that approach. We set out that history below.

In explaining HB 2223 to the House Labor Committee, Assistant Attorney General Bill Canessa discussed the Attorney General's differences with the Bureau of Labor over the bill. One point of contention was over the incorporation of a discovery rule:

"There has been much discussion about an opportunity for discovery. A period of time in which it was reasonable for a complainant to discover whether there had been an act of discrimination. If we put in a time of discovery, we run into all sorts of administrative problems in part of the Bureau having to determine whether the complainant did or should have reasonably known that a discriminatory act had taken place. Though trying to allow a little extra time, we opted on one year."

Minutes, House Labor Committee, HB 2223, Tape 14, Side 1 at 22.5, April 8, 1977. According to Canessa,

"people simply really don't always know when they were discriminated against. A year helps cover that. Another possibility is to put the knew or should have known kind of language * * * and then, of course, you get a certain amount of litigation about what that means and was the employer prejudiced and that sort of thing. So, but even when you use that kind of language, I think it should be a year."

*Id.* at 30.3.

Later in the same session, one representative specifically requested that discovery rule language be included in the engrossed bill. The committee's chair rejected that request, but reserved the issue for later discussion:

"***: Could we also ask to put 'could have reasonably known' in?

"***: No. I'm not going to put it in there. I've intentionally left that out. And I want the 180 days in just like this. * * * I would like to get that out as soon as possible and get it back to the committee because I want a hearing on it. * * * I want each of the committee members to have a paper that would have the following issues: The first one is the statute of limitation. The bill presently has 180 days. I want to look at the issue of whether it should be one year, and the issue of whether it should take in the concerns as expressed by some of the witnesses that the language should say, 'or should have known of such occurrences' or 'first reasonably became aware of such occurrences.' "

*Id.* at Side 2 at 7.4. Although there is no usable record of the House Labor Committee session at which that issue probably was discussed, the available record does make it clear that the bill was approved by the committee, and passed by

the entire House, *without* the discovery rule language that the committee had discussed.

The measure reached the Senate Judiciary Committee in June of 1977. The record shows that the members of that committee, like the members of the House Labor Committee, were cognizant of the fact that the bill did *not* provide for a discovery rule. An exchange occurred between Senator Walt Brown, a member of the committee, and Representative Gretchen Kafoury concerning the issue:

> "SEN W. BROWN expressed his concern on HB 2223 to Rep. Kafoury in that it was his feeling that the non-discovery of a sex discrimination for a period of one year will preclude relief.
>
> "REP. KAFOURY replied that she had worked the past two years with employers trying to explain what the law was regarding affirmative action. She explained she had found that when a complaint is filed so long after the fact * * * it is often a disservice to both the complainant and the employer[.] * * * [S]he felt satisfied the way the language is in HB 2223."

Minutes, Senate Judiciary Committee (June 6, 1977). Ultimately, the bill was endorsed by the Senate Judiciary Committee and, later, passed the Senate, without modifications to the relevant wording.

The foregoing legislative history shows that the legislators who were responsible for the final wording of ORS 659.121(3) generally understood that that subsection did not provide for a delay in the running of the limitations period until a plaintiff's discovery of an employer's discriminatory motive. Given that general understanding, the fact that the bill ultimately was endorsed by both the House and Senate committees without the addition of "discovery rule" wording demonstrates that those committees fully intended to exclude the discovery rule.

Thus, we glean from the legislative history of ORS 659.121(3) support for this answer: ORS 659.121(3) does not incorporate an exception for plaintiffs who fail timely to discover their employers' discriminatory motive. The limitations period provided therein commences with the occurrence of the unlawful conduct or "practice" itself.

**6.** In this case, the unlawful conduct complained of was defendants' allegedly discriminatory discharge of plaintiff. Plaintiff's complaint alleges that that event occurred on January 9, 1992, more than one year before the date on which she filed the present action. Dismissal was appropriate under ORS 659.121(3).[4]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[4] Plaintiff relies on *Williams v. Waterway Terminals Co.*, 298 Or 506, 693 P2d 1290 (1985), but that case was not about the discovery rule and has no application here.